UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-81279-CIV-MARRA

YESSENIA SOFFIN, POKER PRO MEDIA
WORLDWIDE, INC., and ISOCIAL MEDIA, LLC,

    Plaintiffs,

vs.

ECHANNEL NETWORK, INC., and
FACEBOOK, INC.,

    Defendant.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Plaintiffs' Motion to Accept Substituted Service on Defendant eChannel (DE 24). For the reasons stated below, the Motion (DE 24) is **DENIED without prejudice to renew**.

**I. Background**

Plaintiffs Yessenia Soffin, Poker Pro Media Worldwide, Inc., and iSocial Media, LLC initiated this action on November 26, 2012. The Amended Complaint alleges trademark infringement, unfair competition, and trademark dilution against eChannel (Counts I, II, V, VI, VII, and VII), and contributory trademark infringement and deceptive and unfair trade practices against Facebook (Counts II, IV, and X). Plaintiffs Yessenia Soffin and Poker Pro Media Worldwide, Inc. voluntarily dismissed their claims, leaving iSocial Media, LLC as the only Plaintiff in this case. (DE 33). Plaintiff's claims against Facebook are being transferred to the Northern District of California by a contemporaneous order.

Defendant eChannel Networks, Inc. ("eChannel") is an Ontario corporation with its principal place of business in Toronto, Ontario, Canada. Am. Compl., ¶ 7 (DE 9). Dragos Daniel Dumitra and Cosmin Cirprian Dumitra are the principals of eChannel.

While attempting to serve eChannel, Plaintiffs' original counsel contacted eChannel's known attorney, who responded that he was not authorized to accept service. Resp. to Order to Show Cause (DE 5). The summons and complaint were then mailed to eChannel, but the package was returned. *Id.* Plaintiff's current counsel retained a process server in Toronto. On July 12, 2013, the process server went to the address of record for eChannel, 12 Chalet Road, Toronto, Ontario, which was a residence in a "state of disarray," received no answer, and left a business card with a brief explanation of the purpose of the visit. Aff. of Attmpted Service (DE 24-1). On July 18, 2013, the process server returned, spoke to the mother of Daniel and Cirprian Dumitra, who advised that they no longer lived there. *Id.* The process server left his business card. *Id.* The process server's research identified that Dragos Dumitra owned the property at 2 Chalet Road, Toronto, Ontario, and that Cosmin Ciprian Dumitra owned the property at 22 Chalet Road, Toronto, Ontario. *Id.*

On August 7, 2013, the process server visited the property at 22 Chalet Road, and discovered that the house was being renovated. *Id.* A contractor advised that Daniel and Cirprian Dumitra were upstairs, but when the process server proceeded there, a different contractor said that they were not available. *Id.* The process server then visited 2 Chalet Road, which was "also in a state of full being renovation." *Id.* A contractor said that Daniel and Cirprian Dumitra were not present, but that they could be found at 12 Chalet Road. *Id.* The process server proceeded to 12 Chalet Road, and spoke to Daniel and Cirprian Dumitra's mother again, who advised that both Daniel and Ciprian were in Europe for the remainder of the month, that she did not relay the process server's previous request

to speak with them, and closed the door. *Id.*

During the week of August 17 - 24, 2013 someone registered as "Dumitra Dragos" in Romania viewed the LinkedIn profile of Adam S. Goldman, an associate in the firm representing Plaintiff in this case. On August 27, 2013, Plaintiff's process server posted copies of the summons and complaint in sealed envelopes on the front doors of 2 Chalet Road, Toronto, Ontario, and 22 Chalet Road, Toronto, Ontario, as well as sent copies of the summons and complaint to the same addresses by first class mail. Aff. of Service (DE 24-2).

Plaintiff argues that numerous attempts at service have been made, that eChannel is evading service, that at least one of the principals of eChannel is aware of this law suit, and asks the Court to declare service effective August 27, 2013.

**II. Discussion**

A foreign corporation may be served "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)" Fed. R. Civ. P. 4(h)(2). Rule 4(f), in turn, provides:

> Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served at a place not within any judicial district of the United States:
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
> (C) unless prohibited by the foreign country's law, by:
> (i) delivering a copy of the summons and of the complaint to the individual

>personally; or
>(ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>(3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Plaintiff relies on Rule 4(f)(3). Under this provision, a court may approve methods of service not prohibited by international agreements as long as the method is consistent with due process and minimizes offense to foreign law. *Prewitt Enterprises, Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 927 (11th Cir. 2003) (finding that serving OPEC at its headquarters in Austria by mail was ineffective because it was prohibited by Austrian law).

**1. Convention on Service Abroad does not prohibit service by mail in Canada**

Both United States and Canada are parties to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Convention"). *TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 689 (S.D. Fla. 2012). Article 1 of this treaty provides that the Convention applies "where there is occasion to transmit a judicial or extrajudicial document for service abroad," except when the address of the person to be served is unknown. Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters art. 1, Nov. 15, 1965, 20 U.S.T. 362, T.I.A.S. 6638, Art. 1, 1969 WL 97765. "[C]ompliance with the Convention is mandatory in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). Here, a Canadian Defendant has to receive notice of this case, and the address of the Defendant is known. Accordingly, the Convention applies.

The Convention provides that each contracting state will designate a Central Authority to receive service requests from other contracting states. 20 U.S.T. 362, T.I.A.S. 6638, Art. 2. Thus,

service through the Central Authority is the primary method of service under the Convention. *Bitton*, 278 F.R.D. at 690. The Declarations to the Convention filed by Canada state that the "[t]he nomal procedure that will be used by Central Authorities in Canada is personal service." Canadian Declarations, Art. 5, 8, 10, 11, 12, 15, 16, 2, available at http://www.hcch.net/index_en.php?act=status.comment&csid=392&disp=resdn (last visited June 23, 2014). Nevertheless, the Central Authority will serve in Ontario by any form of mail at the option of the requested party. *Id.*

Article 10(a) of the treaty also states that when the state of destination does not object, the Convention does not interfere with "the freedom to send judicial documents, by postal channels, directly to persons abroad. 20 U.S.T. 362, T.I.A.S. 6638, Art. 10(a). Further, Canada "does not object to service by postal channels." Canadian Declarations, Art. 5, 8, 10, 11, 12, 15, 16, 2; *Bitton*, 278 F.R.D. at 691. Because Article 10(a) refers to "sending" rather than "serving" documents, some courts have interpreted this provision to apply only to post-service transmission of documents, such as discovery requests. *Barriere v. Juluca*, 12-23510-CIV, 2014 WL 652831, at *3 (S.D. Fla. 2014). However, numerous district courts in this District have found that originating service by mail may be allowed under the Convention. *E.g., id.*; *Bitton*, 278 F.R.D. at 690; *TracFone Wireless, Inc. v. Pak China Group Co. Ltd.*, 843 F. Supp. 2d 1284, 1292 (S.D. Fla. 2012). Thus, service by mail may be allowed in this case as long as it does not contradict Canadian laws and fulfills the due process requirements.

**2. Canadian law may allow for service by mail**

Personal service of originating process is the default rule in Ontario, Canada. R. Civ. P., R.R.O., 1990, reg. 194, r. 16.01, 16.02(1)(c); *In re Greater Ministries Intern., Inc.*, 282 B.R. 496,

499 (M.D. Fla. 2002) (applying Ontario law). The Ontario Rules of Civil Procedure also provide for alternative methods of service when appropriate. R. Civ. P., R.R.O., 1990, Reg. 194, r. 16.03(4), (5), (6); *In re Greater Ministries Intern., Inc.*, 282 B.R. at 500. For example, "[s]ervice of a document may be made by sending a copy of the document together with an acknowledgment of receipt card (Form 16A) by mail to the last known address of the person to be served, but service by mail under this subrule is only effective as of the date the sender receives the card." *Id.* Further,

> [w]here an attempt is made to effect personal service at a person's place of residence and for any reason personal service cannot be effected, the document may be served by,
> (a) leaving a copy, in a sealed envelope addressed to the person, at the place of residence with anyone who appears to be an adult member of the same household; and
> (b) on the same day or the following day mailing another copy of the document to the person at the place of residence.

*Id.*

Also, when a corporation's head office, registered office, or principal place of business cannot be found at the last address recorded with the Ministry of Consumer and Commercial relations, service on that corporation may be made by mailing a copy of the document to the corporation at that address. *Id.*

Here, the complaint and summons were not mailed with a receipt card, the process server did not leave the summons and the complaint with anyone, and it does not appear clear that eChannel cannot be found at the registered address. Thus, even if it is appropriate to use any of these alternative methods of service, Plaintiff did not comply with Rule 16.03.

Lastly, the Ontario Rules of Civil Procedure provide that,

> [w]here it appears to the court that it is impractical for any reason to effect prompt service of an originating process or any other document required to be served

> personally or by an alternative personal service under these rules, the court may make an order for substituted service or, where necessary in the interest of justice, may dispense with service.

R. Civ. P., R.R.O., 1990, Reg. 194, r. 16.04(1).

For example, in *In re Greater Ministries*, the court found that it was not "impractical" under the Ontario Rule of Civil Procedure 16.04(1) to serve an individual when that individual lived in a condominium complex where the concierge did not allow the process server to enter. 282 B.R. at 501.

Here, the situation is similar. Defendant's address is known, but the process server has been thus far prevented from serving eChannel's principals by various gatekeepers. Thus, it is premature to find that personal service is "impractical." Additionally, it appears that Plaintiff has not even attempted to serve eChannel through Canadian Central Authority, and has not even attempted to mail the summons and the complaint and request a return receipt. Accordingly, additional attempts of personal service must be made.

At the same time, it is evident that the Ontario Rules of Civil Procedure allow for service by mail or by other means in some situations, and may even allow to dispense with service if achieving it is "impractical" and in the interest of justice. Thus, allowing for a substituted method of service will not offend the law of Ontario, Canada. *Cf. Prewitt Enterprises, Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916 (11th Cir. 2003) (service on the defendant in Austria was expressly prohibited by Austrian law).

**3. The requirements of due process are not satisfied**

"Constitutional due process requires only that service of process provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and

7

afford them an opportunity to present their objections.'" *Chanel, Inc. v. Zhixian*, 10-CV-60585, 2010 WL 1740695, at *3 (S.D. Fla. 2010) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

Here, the mother of Dragos Daniel Dumitra and Cosmin Cirprian Dumitra advised the process server that they no longer could be found at eChannel's registered address, and later that they were in Europe for the remainder of the month. The process server did not leave a copy of the complaint and summons with her, but mailed these documents and attached them to the front doors only at the Dumitras' properties, but not at the eChannel's registered address.

Further, "Dumitra Dragos" who viewed Plaintiff's lawyer's LinkedIn profile is identified as being in Romania. Thus, there is some indication that at least one of the principals of eChannel was not even in Canada when service was attempted. Accordingly, so far, the notice is insufficient to apprise the interested parties of the pendency of this case.

### III. Conclusion

In light of the foregoing, Plaintiffs' Motion to Accept Substituted Service on Defendant eChannel (DE 24) is **DENIED** without prejudice to renew.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 30th day of June, 2014.

_____
KENNETH A. MARRA
United States District Judge